## MORROW v. OELSCHLAGER et al.

(Circuit Court of Appeals, Third Circuit. March 3, 1926.)

No. 3364.

Patents ⬅⟶328.

1,064,850, Morrow patent, relating to reinforced concrete construction by arrangement of columns having reinforced heads, *held* invalid.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Suit by David W. Morrow against Charles E. Oelschlager and others. Decree for defendants, and plaintiff appeals. Affirmed.

The patent herein involved is No. 1,064,-850, issued to Morrow.

William A. Redding, of New York City, and Augustus B. Stoughton, of Philadelphia, Pa., for appellant.

Howson & Howson, of Philadelphia, Pa., and Macleod, Calver, Copeland & Dike, of Boston, Mass. (George P. Dike, of Boston, Mass., and Charles H. Howson, of Philadelphia, Pa., of counsel), for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. With the possibilities of broader use in the building art of concrete, when wet, came a rapid adaption of old methods to this new field. The mobility of the initial mixture gave an ease in use, and the later rapid hardening a rigidity and stability of result, at once novel and remarkable. But, after all, it was usually but the advance incident to the use of concrete in connection with old structures and known methods. At the same time the change was, on the surface, so remarkable that, unless guarded against, a subtle and plausible temptation confronted courts to attribute to the sphere of invention what was only the natural and to be looked for advance of the building art, once the mobility of wet concrete in construction, and its rigidity in result, were recognized.

Guarding itself against the danger of subjecting the later development of the concrete art to the blighting effect of its blanketing

by steps in its progress, this court, in an early, but comparatively unimportant, case (MacArthur v. Simplex, 230 F. 648, 145 C. C. A. 58), declined to find invention in a concrete process and apparatus for concrete piles under concrete foundations, saying: "This case involves the use of cement to form building piles, and is an instance of one of the many new uses to which cement has lent itself, owing to that plastic capacity by which it may be carried to any desired point, and to its hardening capacity by which it is there converted into a solid structure. These qualities of temporary plastic movement and permanent solidity led to its substitution for stone masonry to form piers for buildings. * * * From the use of cement piers as a foundation to buildings, it was to be expected the building art would naturally advance to deeper foundations, in the shape of piles."

In a later and more far-reaching case, which concerned the distribution of concrete in its plastic state, and where it was sought to patent in concrete distribution, processes long followed in grain movement, this court, in Concrete Appliances Co. v. Gomery, 291 F. 492, said: "Convinced as we are that in roads, piers, docks, bridges, and buildings generally, concrete is the growing material of the future, we believe its advance should be in no way embarrassed by this patent, by which the art is now sought to be blanketed."

In floor and pillar construction, the ease with which plastic wet concrete could be distributed, the almost instant rigidity which followed, with its consequent stability and tensile strength and the pleasing surface to such structures, were all elements which, on the surface, suggested patentable grant; but this court, in Turner v. Lauter Piano Co., 248 F. 930, 161 C. C. A. 48, consistently and properly, as we think, adhered to the continuity of its attitude when it there said: "There doubtless is merit in Turner's system of concrete construction. It may be superior to other systems; but merit, and superiority even, may spring from a conception which does not involve invention. These qualities may come, as we think they do in these patents, from a careful assemblage of different elements from various sources and the clever combining of them."

The patent here involved, in our judgment, falls within these lines. The staggering of supporting columns is as old as architecture, and with their use was full recognition of their weight-supporting capacity. The practice of reinforcing concrete, by enveloping metal and placing belts of such reinforced concrete over the heads of columns, was fully known by engineers and builders. In that regard this court, in the last-cited case, said: "There is * * * neither invention nor novelty in merely placing metal reinforcement in concrete at places at which strains come. The very principle of reinforcement, as the word denotes, is to give force to or strengthen the place that is weak, by adding something that is strong. Invention in reinforcement is to be found only in discovering a new principle, or in employing new means embodying the old principle. Therefore one striving to find a new principle, or to invent a new means of concrete reinforcement under the old principle, enters a well-known and widely practiced art, and must do something more than care for tensile strains at places where they are known to come."

The present patentee has combined two well-known elements. He has staggered his columns; he has placed over his column head reinforced concrete beams, but in their aggregate relations the staggered beams simply do what staggered beams have always done, and the reinforced, superimposed concrete beams simply carry the weight they have always done on columns, whether staggered or regular. Where, then, was invention? We, as the court below, fail to find in this aggregation, this use of old elements which simply continue to do what they have always done, any taint of patentability. It is a building, an engineering act, purely and simply, and as such is open to unrestricted use by the public.

The decree below is therefore affirmed.