YOUNG et al. v. JOHN McSHAIN, Inc., et al.

No. 4943.

Circuit Court of Appeals, Fourth Circuit.

Aug. 18, 1942.

Ralph L. Chappell, of Kalamazoo, Mich. (Earl & Chappell, of Kalamazoo, Mich., Charles Markell and Cook & Markell, all of Baltimore, Md., on the brief), for appellants.

Otto R. Barnett, of Chicago, Ill. (Lawrence T. Barnett and Barnett & Truman, all of Chicago, Ill., and Edwin F. Samuels. Galvin & McCourt, and Edward L. Ward, all of Baltimore, Md., on the brief), for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in a patent infringement suit involving Young patents Nos. 1,-928,748 and 1,938,887. The defenses were invalidity and non-infringement; and the court below held both patents invalid as to the claims in suit.

Both patents are combination patents relating to concrete floor construction with the use of pre-fabricated concrete joists reinforced with steel. Patent No. 1,928,748 covers the combination of a plurality of pre-cast joists, having top and bottom longitudinal reinforcements with cross sheer strands welded thereto, and a floor slab of concrete which embraces the head of the joists. The distinguishing characteristic of the construction is said to be that "the joist with the longitudinal reinforcing members in head and base joined by welded sheer strands is combined with a floor slab which embraces the head of the joist." Claims 2, 4, 6 and 7 of the patent are relied on. Claim 6, which may be taken as typical, is as follows:

"6. A concrete floor or roof construction comprising a plurality of pre-cast concrete joists spaced apart, and the said joists reinforced with longitudinal reinforcing strands in the top and bottom and having cross shear strands welded thereto, and a floor slab carried on forms or centering supported from the joists, the said concrete slab being formed with shoulders embracing the heads of the said joists."

Patent 1,938,887 covers the combination of a plurality of pre-cast joists with a monolithic floor slab, wall and girder construction, in which the floor slab embraces the head of the joists and the walls and

girder embrace their ends. Also included are metal rods in the floor slab extending parallel with the joists and over the girders to give continuity to the joists and redistribute the stresses incident to the loading. Claims 4, 5, 8, 9 and 10 of this patent are in suit. The first three of these claims relate to the monolithic construction in which the ends and heads of the joists are embraced in the slab and girder; the last two relate to the use of rods in the slab across the girder and parallel with the joists. Claim 8 may be taken as typical of the first group and claim 9 of the second. They are as follows:

"8. A concrete floor formed with precast joists having wall and girder supports extending between the said joists and embracing the same, the floor slab being formed with extensions embracing the heads of the said joists, the said concrete being continuous and embracing the ends of said joists.

"9. A concrete floor formed with precast joists having girder supports extending between the said joists and embracing the same, a floor slab formed with embracing portions for the heads of the said joists, the concrete being continuous and embracing the ends of said joists, and reinforcement rods in the floor slab above the said girder parallel to the said joists affording cantilever support and continuity."

▆▆▆ We agree with the court below that none of the claims is valid but that all cover mere aggregations of devices, which were old in the art of steel-concrete construction, and which perform in the aggregation merely the functions which they performed in the prior art, without any new effect or resultant from their having been brought together. It is well settled that invention cannot be predicated of such aggregation of old elements even though their bringing together may have resulted in a useful product. Hailes v. Van Wormer, 20 Wall. 353, 368, 22 L.Ed. 241; Heald v. Rice, 104 U.S. 737, 755, 26 L.Ed. 910; Powers-Kennedy Contracting Corp. v. Concrete Mixing & Conveying Co., 282 U.S. 175, 186, 51 S.Ct. 95, 75 L.Ed. 278; Doughnut Mach. Corp. v. Joe Lowe Corp., 4 Cir. 67 F.2d 135, on rehearing 4 Cir., 71 F.2d 423; Victor Cooler Door Co. v. Jamison Cold Storage Door Co., 4 Cir., 44 F.2d 288, 293; Morrow v. Oelschlager, 3 Cir., 11 F.2d 524, 525; Turner v. Lauter Piano Co., 3 Cir., 248 F. 930; Turner v. Moore, 8 Cir., 211 F. 466. No-

where is the rule better stated than by the Supreme Court in the old case of Hailes v. Van Wormer, supra [20 Wall. 368, 22 L.Ed. 241], as follows:

"It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combination, and not a mere aggregate of several results each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel, is not invention. No one by bringing together several old devices without producing a new and useful result the joint product of the elements of the combination and something more than an aggregate of old results, can acquire a right to prevent others from using the same devices, either singly or in other combinations, or, even if a new and useful result is obtained, can prevent others from using some of the devices, omitting others, in combination."

And the criterion for distinguishing between patentable combination and mere aggregation is thus tersely stated by Mr. Justice Brown in Richards v. Chase Elevator Co., 158 U.S. 299, 302, 15 S.Ct. 831, 833, 39 L.Ed. 991: "Unless the combination accomplishes some new result, the mere multiplicity of elements does not make it patentable. So long as each element performs some old and well-known function, the result is not a patentable combination, but an aggregation of elements."

Nearly a quarter of a century ago the Circuit Court of Appeals of the 3d Circuit in Turner v. Lauter Piano Co., 3 Cir., 248 F. 930, 932, held invalid a patent relating to reinforced concrete flooring on principles which are applicable to the patents here involved. What was said by Judge Woolley, speaking for the court, with relation to the aggregation of devices for meeting load strains in concrete construction is peculiarly apposite. He said:

"Reenforced concrete of the modern kind came into use as a building material about fifty years ago. Its growth has been very rapid; it is now used upon an

immense scale in a great variety of structures. During the progress of this art, much has been learned concerning the properties of concrete and great advances have been made in methods of using it. Yet, notwithstanding the knowledge acquired and the advances made, the fundamental problems of the art are the same today as they were in the beginning. They have to do with the peculiar characteristics of concrete and with means for meeting them. It is a matter of general knowledge that concrete is strong in resisting compression strains and weak in withstanding tensile strains. Places at which both strains may be expected, while susceptible of accurate mathematical ascertainment, are so well known that they are determined empirically by many engaged in the art. Therefore, as it is easy to ascertain, in one way or another, just where weak places in concrete construction are, the art has produced means with which to strengthen them. This consists in their reenforcement with materials possessing characteristics precisely the opposite of those of concrete. Thus, metal which possesses tensile strength is placed at weak points in concrete where it is subjected to tensile strains. This is called reenforcement and the product is reenforced concrete.

"There is today neither invention nor novelty in merely placing metal reenforcement in concrete at places at which strains come. The very principle of reenforcement, as the word denotes, is to give force to or strengthen the place that is weak by adding something that is strong. Invention in reenforcement is to be found only in discovering a new principle or in employing new means embodying the old principle. Therefore, one striving to find a new principle or to invent a new means of concrete reenforcement under the old principle, enters a well known and widely practiced art and must do something more than care for tensile strains at places where they are known to come. * * * There doubtless is merit in Turner's system of concrete construction; it may be superior to other systems; but merit, and superiority even, may spring from a conception which does not involve invention. These qualities may come, as we think they do in these patents, from a careful assemblage of different elements from various sources and the clever combining of them. The union of the selected elements may be an improvement upon anything the art contains, but, if, in combining them, no novel idea is developed, there is no patentable invention, however great the improvement may be."

The use of pre-cast reinforced concrete joists in concrete floor construction was old in the art. It is shown as early as Waite patent No. 605,696 of 1898, and appears in a number of subsequent patents, including Evers No. 1,273,334 of 1918, which shows performed joists of I beam shape having longitudinal reinforcing rods through their top and bottom flanges. The use of cross rods or "sheer" members in such reinforcing was also old as was the welding of these to the longitudinal reinforcing rods. This was shown in Smith No. 992,994 of 1911, Ellinger No. 1,094,841 of 1914, and Yeager No. 1,627,000 of 1927. And there was nothing novel in having the floor slab embrace the head of the joist. This was shown in Simpson & Shoemaker No. 739,-030 of 1903, Herbst (German) No. 204,419 of 1907, Ransome No. 918,699 of 1909, Christin (British) No. 120,110 of 1918; Christin No. 1,343,659 of 1920; Christin (French) No. 590,942 of 1925; Robin (French) No. 610,714 of 1926; and Hoffman (Austrian) No. 107,735 of 1928. An article appearing in the Cement Age in the year 1911 shows that this device was well understood and in practical use at that time.

With reference to the features of patent No. 1,938,887, the embracing of the end of the joist by the concrete girder is shown by Ransome No. 694,577 of 1902, Simpson & Shoemaker No. 739,030 of 1903, Herbst (German) No. 204,419 of 1907, Christin (French) No. 590,942 of 1925, and Robin (French) No. 610,714·of 1926. The use of metal rods in the slab above the girder and parallel with the joists is shown by Robin, the patent last named, by Roch (British) No. 155,964 of 1921, Christin (French) No. 590,942 of 1925 (see fig. 2), and by Branson No. 1,840,304 of 1932. The principle of using such rods above supports in a completely monolithic structure was well known and was shown by Hennebique No. 611,907 of 1896. And as said in Turner v. Moore, 8 Cir., 211 F. 466, 469, "Cantilever bars lying across and projecting beyond the heads of supports were old with Hennebique." It could not, of course, constitute invention to take this device of the completely monolithic construction and apply it to a like purpose in construction which differed therefrom only in that it made use of pre-cast joists.

It is perfectly clear that each of the features to which we have referred performs precisely the same function in the concrete construction of the patents in suit that it performed in the prior art, and that consequently invention cannot be predicated of the aggregation of these features. But even if the aggregation be treated as a combination otherwise patentable, it is clear that it is anticipated both by Simpson & Shoemaker No. 739,030 and the French patent to Robin No. 610,714. Simpson & Shoemaker shows the use of pre-cast reinforced concrete joists, with the heads of the joists embraced by the floor slab and the ends embraced by the girder and with the use of steel rods across the girder, above and parallel to the joists. It does not show the welding of the cross bars to the longitudinal reinforcing members of the joists; but it does show cross bars in the form of metal stirrups passing under these longitudinal members and embedded in the concrete, and the welding of the two together certainly does not rise to the dignity of invention. Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 27 L.Ed. 438; Wine Ry. Appliance Co. v. Baltimore & O. R. Co., 4 Cir., 78 F.2d 312, 319. The following from the specification of the Simpson & Shoemaker patent shows the utter lack of novelty in the construction of the patents in suit:

"The floor-beams A are made of concrete or other similar plastic materials D, in the lower flange of which are embedded steel or metal rods E and stirrups F and having dovetails or keys G on the top surface. These beams are formed in the preferred form in molds at a shop or on the ground and left until sufficiently dry or set to permit of handling without breaking same, after which they are raised and placed in the structure. * * *

"The girder B is composed of concrete reinforced with metal similar to beams A, but with the difference that the girder is formed upon the wood center in place, the concrete forming the bulk of which unites with the ends of the floor-beams A and securely anchors the same in place. * * *

"The concrete D is now placed over the entire surface of the girders, beams, and arches to the desired thickness, thus binding the structure into one solid mass and ready to receive the ordinary finished floor."

Likewise all the features embraced by both of the patents sued on are to be found in the Robin French patent, except the element of welding, which, as we have seen, is unimportant. Plaintiff contends that the Robin patent does not show the joists embraced by the floor slab for their full length, basing this contention on the fact that the wooden form for the girder, as shown in one of the drawings, would preclude the making of the embracing shoulder to the extent of the thickness of this form. The drawing for the floor form, however, clearly provides for the shoulder embracing the head of the joists, and it would require little skill to chamfer the girder form so as to make the shoulder extend completely to the girder. Certainly invention could not be found in the act of so extending it. Plaintiff objects also that Robin shows the head of the joist extending only a little way into the girder; but it is absurd to contend that invention could be predicated upon extending it an inch or so further. How far it should be extended to obtain the best results was a mere matter of applying technical knowledge and skill, not a matter of invention.

■ Question has been raised as to the action of the trial judge in holding claims 9 and 10 of patent 1,938,887 invalid after plaintiff had admitted that they were not infringed and had asked to withdraw them from suit. At the time the request was made, however, much evidence had been taken with respect both to the validity and the infringement of these claims; and whether plaintiff should have been permitted to withdraw them at that time, and thus avoid an adjudication of one of the principal questions involved in the trial, was a matter resting in the sound discretion of the trial judge. Rule 41(a) (2) of Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c. We think that, under the circumstances of the case, he exercised that discretion wisely and properly in refusing to permit the claims to be withdrawn.

For the reasons stated, the decree appealed from will be affirmed.

Affirmed.