## SANFORD INV. CO. v. ENTERPRISE WHEEL & CAR CORPORATION.

### No. 4962.

Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1942.

William S. Hodges, of Washington, D. C. (William A. Stuart, of Abingdon, Va., on the brief), for appellant.

Gilbert P. Ritter, of Washington, D. C. (Henry K. Muir, of Washington, D. C., and Floyd H. Roberts, of Bristol, Va., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in a patent infringement suit in which the patents sued on were held invalid by the court below as mere aggregations of old devices lacking in patentable novelty. The patents involved are Stow Patent No. 1,961,016 and Stow Reissue Patents Nos. 20,590 and 20,591. They embrace a total of 397 claims; but only claims 21, 82 and 192 of Patent No. 1,961,016, claims 1, 12, 13, 27, 70 and 112 of Reissue Patent No. 20,-590, and claims 17 and 64 of Reissue Patent No. 20,591 are relied upon in this appeal.

All three patents relate to low-swung, wing-body mine cars. The basic concept of Patent No. 1,961,016 is thus described in the brief of appellant: "The basic concept of patent 1,961,016 includes the production of a strong traction truck frame, possessing a certain amount of flexibility, constructed of side sills and stiff end members rigid in respect to the side members. It also includes increasing the lading capacity of the car, and lowering the center of gravity, by arranging the car floor in a plane below the axles, whereby the side sills and the end members enclose part of the lading space so as to function as lading retaining walls. * * * Stow has also solved the problem of lifting the lading from the low-plane floor, so as to discharge it over the end structure while dumping." The distinctive elements of the combination claimed to be patentable, as pointed out by counsel at the bar of the court, are: (1) metal side bars of the traction frame of the car; (2) end bars of the frame attached to the side bars at

right angles; (3) angle braces where the side bars and end bars join; (4) a fixed floor beneath the axle level and attached to the side bars; and (5) a deflector extending from the floor at the end gate to prevent the accumulation of coal or ore behind the end bar. The three claims in suit are as follows:

"21. In an end-dump mine or similar rail car, the combination of side beams, end structures joining the side beams, car axles above the level of the lower portions of the side beams, a stationary sub-axle lading bottom structure supported by the side beams and comprising an end part extending from side beam to side beam and rising to the height of the adjacent end structure.

"82. In a 4-wheel mine or similar rail car, the combination of car axle journals, car wheels, longitudinal metal load-supporting side members parts of which lie inside the upright longitudinal plane of the insides of the flanges of the car wheels, a stiff end bumper and haulage means rigid in respect of the side members, car axle journals lying in a plane cutting the side members, together with a stationary central lading bottom at least in substantial part below the plane of the tops of the car axle journals and cooperative with said side members for bracing the same.

"192. In a traction truck frame for a mine or similar rail car, the combination with car axles having journals, and a lading bottom located at least in substantial part below the horizontal plane of the tops of the car axle journals, of a transverse end sill structure having a bumper means and a cushioning springs therefor and extending above and below said plane."

The combination covered by Reissue Patent No. 20,590 differs from that just described in that the traction frame of the car is required to be rigid and the floor to be of sheet metal. Reissue Patent No. 20,591 adds to the combination, as means of reinforcing the side and end walls of the lading body, cross bars resting upon the side sills and having their ends secured to reinforcing beams attached to the sides of the body, and reinforcing strips attached to the ends of the body.

The elements of the combinations of all of the patents are admittedly old in the art; and no invention is claimed as to any single element. The findings of the lower court point out in detail where the various elements were found in the prior art,

and examination of the record convinces us that these findings are correct. What was said in the findings with regard thereto need not be repeated here. Accurate summary with respect to these elements and the lack of invention as to each is contained in the concluding paragraph of appellee's brief, from which we quote the following: "He (Stow) did not invent wing type cars having the floors of their central portions at a lower level than the axles of the car wheels, for that was an old feature of mine car construction in the Alpha Portland Cement Company and other mine cars; he did not invent wing type mine cars in which the floors of the wings were below the level of the car wheel axles, for that had been done long before in the cars of stipulations M, Q and R; he was not the first to use the underframe of a mine car to receive and transmit the tensile and bumping haulage strains imparted to the car, for underframes had been used for that purpose in the Alpha Portland Cement Company cars and in the cars of stipulation O and of Simpson patent No. 1,176,782, for example; he did not invent the plan of having the axles of the car wheels intersect the side sills of the car, as that had been done in the Alpha Portland Cement Company cars, and in the cars of stipulation O and of Simpson patent No. 1,176,782; he did not originate the idea of using a relatively light and flimsy lading holding body mounted on a strong and rigid underframe, for that feature of mine car construction was old in the Alpha Portland Cement Company cars and in the First Creek Coal Company cars, for example; he did not invent hoods or coverings for the upper parts of the wheels of mine cars, for they were old in the Alpha Portland Cement Company cars and in the cars of stipulations M, R and S and their antiquity was expressly admitted by Stow in Reissue patent No. 20,590; he was not the inventor of inclined deflector plates to facilitate the discharge of lading from a mine car, for such deflector plates were old in the cars of stipulations D, E and F and Otis British patent No. 14,081 of 1902, for example; he did not invent the application of bumpers and draw-bars or couplings to the ends of mine cars, for that had been done in the Alpha Portland Cement Company cars, in the First Creek Coal Company cars, and in the cars of stipulations J and O and the Simpson Patent No. 1,176,782; he did not invent the

idea of using transverse cantilever beams as car body supports, for that plan had been adopted in the cars of the Kadel patent No. 1,207,176 of 1916, the Neikirk patent No. 1,299,212 of 1919, and of stipulation S."

Appellant objects to our considering the mine cars covered by the stipulations above referred to as being in the prior art, but the objection is without merit. The stipulations were to the effect that the mine cars therein described were built, sold and publicly used on dates which were prior to the applications for the patents in suit, and blue prints fully describing the cars were attached to the stipulations. It is true that to each stipulation was attached a general reservation to the effect that the plaintiff did not admit that the cars described were made, used or sold prior to the filing dates of the patents; but this general denial of admissions could not detract from the effect of the specific facts admitted by the stipulations.

■ Appellant refers to a number of minor differences between the elements claimed in the patents sued on and their exemplification in the prior art. It is significant, however, that no patent has been sought with respect to any of these differences, which, even though they be improvements, involve nothing more than the exercise of the skill of the art and do not rise to the dignity of invention. Young v. John McShain, Inc., 4 Cir., 130 F.2d 31, 34; Wine Ry. Appliance Co. v. Baltimore & O. R. Co., 4 Cir., 78 F.2d 312, 319, and cases cited; Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 231, 27 L.Ed. 438. As was well said by Mr. Justice Bradley, speaking for the Supreme Court in the case last cited: "The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the art. It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith."

■ We agree with the court below that none of the claims is valid but that all cover mere aggregations of devices, which were old in the art of mine car construction, and which perform in the aggregation merely the functions which they performed in the prior art, without any new effect or resultant from their having been brought together. It is well settled that invention cannot be predicated of such aggregation of old elements even though their bringing together may have resulted in a useful product. Hailes v. Van Wormer, 20 Wall. 353, 368, 22 L. Ed. 241; Heald v. Rice, 104 U.S. 737, 755, 26 L.Ed. 910; Powers-Kennedy Contracting Corporation v. Concrete Mixing & Conveying Co., 282 U.S. 175, 186, 51 S.Ct. 95, 75 L.Ed. 278; Toledo Pressed Steel Co. v. Standard Parts, 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334; Cuno Engineering Corp. v. Automatic Devices Corporation, 314 U.S. 84, 62 S.Ct. 37, 40, 86 L.Ed. 58; Doughnut Mach. Corporation v. Joe-Lowe Corporation, 4 Cir., 67 F.2d 135, on rehearing 4 Cir., 71 F.2d 423; Victor Cooler Door Co. v. Jamison Cold Storage Door Co., 4 Cir., 44 F.2d 288, 293; Morrow v. Oelschlager, 3 Cir., 11 F.2d 524, 525; Turner v. Lauter Piano Co., 3 Cir., 248 F. 930; Turner v. Moore, 8 Cir., 211 F. 466. Nowhere is the rule better stated than by the Supreme Court in the old case of Hailes v. Van Wormer, supra, 20 Wall. 368, 22 L.Ed. 248, as follows: "It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combination, and not a mere aggregate of several results, each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel,

840

is not invention. No one by bringing together several old devices without producing a new and useful result, the joint product of the elements of the combination and something more than an aggregate of old results, can acquire a right to prevent others from using the same devices, either singly or in other combinations, or, even if a new and useful result is obtained, can prevent others from using some of the devices, omitting others, in combination."

And the criterion for distinguishing between patentable combination and mere aggregation is thus tersely stated by Mr. Justice Brown in Richards v. Chase Elevator Co., 158 U.S. 299, 302, 15 S.Ct. 831, 833, 39 L.Ed. 991: "Unless the combination accomplishes some new result, the mere multiplicity of elements does not make it patentable. So long as each element performs some old and well-known function, the result is not a patentable combination, but an aggregation of elements."

For the reasons stated, the decision appealed from will be affirmed.

Affirmed.