MATHEWS *v.* MACHINE COMPANY.

1. Letters-patent No. 4887, bearing date April 30, 1872, granted to Washburn Race and S. R. C. Mathews for an improvement in hydrants, being a reissue of letters No. 19,206, dated Jan. 26, 1858, are void, inasmuch as, by claiming the elements of the invention separately and not as a combination, which is claimed in the original letters, they enlarge the scope of the latter, and they also cover a different invention. *Miller* v. *Brass Company* (104 U. S. 350) cited and approved.
2. Letters-patent No. 96,959, bearing date Nov. 16, 1869, granted to said Race and Mathews for an improvement in hydrants, are also void, as they embrace matters previously known and in public use.

APPEAL from the Circuit Court of the United States for the District of Massachusetts.

The facts are stated in the opinion of the court.

*Mr. George L. Roberts* and *Mr. George Harding* for the appellants.

*Mr. Causten Browne* for the appellees.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This case comes before us on an appeal from a decree dismissing a bill in equity filed by Samuel R. C. Mathews and

others, the appellants, against the Boston Machine Company and others, in which they prayed for an injunction and account of profits for an alleged infringement of two certain patents granted to Washburn Race and S. R. C. Mathews, one dated April 30, 1872 (being a reissue of a patent granted Jan. 26, 1858), and the other dated Nov. 16, 1869. The defendants, in answer, denied that Race and Mathews were the first inventors of the thing patented, referring to several prior patents, and naming prior instances of knowledge and use of the alleged invention; and amongst other things setting up a patent issued to one Zebulon E. Coffin, dated July 21, 1868. They also denied that the reissued patent was for the same invention as the original; and denied infringement. The complainants filed a supplemental bill, alleging that since the filing of the original the defendants had procured a reissue of Coffin's patent, which contained substantially the same invention as that described in the complainants' patent of 1869; but that Race and Mathews were the first and original inventors of the thing patented; and therefore they prayed that the Coffin patent might be declared void.

The Race and Mathews patents, on which this suit was brought, relate to casings or jackets around hydrants, and to the valves for letting on the water when wanted for use, and for draining it out of the hydrant when not in use. It is conceded that the objects of the casing are to prevent freezing in and around the hydrant, by surrounding it with a volume of dead air, to keep it free from contact with the surrounding earth; and to enable the hydrant to be taken out of the ground without removing the surrounding earth. If the earth is in contact with the hydrant, it lifts the hydrant out of place by the action of the frost, and has to be dug away when repairs or other operations have to be performed below the surface. Many casings formerly used were fastened in different ways to the hydrant, and they raised it, when they were lifted by the frost, causing breakage or leakage or other damage by the displacement; and the hydrant could not be disconnected from the main and removed, without removing the casing also.

So far as the improvement in the casing is concerned, the

principal thing claimed to be effected by the patentees, Race and Mathews, is the placing of the case in position without attaching it to the hydrant, or to the elbow of the main pipe below, so that the hydrant, whilst being protected from frost and the surrounding earth, may be lifted out separately, and so that the lifting of the case by the frost and surrounding earth will not disturb the hydrant. These objects are effected by two different devices; first, by causing the case to rest loosely on a flange projecting from the elbow of the main, or otherwise, and allowing it to slide up the hydrant which it surrounds, and which is enlarged at that point, for holding the valves; secondly, by allowing the upper end of the case to embrace the hydrant (enlarged at that point also), and to slide up and down upon it like a sleeve. Of course, the case must fit the hydrant snugly enough to keep out the influx of cold air above, and of dirt below; but not so tight as to prevent the hydrant from being lifted out, or the case from slipping up and down upon it. This is the thing which the complainants contend that Race and Mathews invented.

As first patented in 1858, the invention did not accomplish the object. The bottom of the case, it is true, surrounded the hydrant like a sleeve, and rested on a flange projecting from the elbow (which allowed the hydrant to be separately removed without removing the case); but the top of the case was enclosed in a flange projecting from the enlarged part of the hydrant above, like the brim of a hat, but turned down over the top of the case, so that the latter, though unconnected otherwise with the hydrant, yet if it were lifted by the frost, it would press upward against the flange and raise the hydrant also. This difficulty was remedied by the invention of the improvement patented in 1869, by which the top of the case was made to surround and enclose the upper enlargement of the hydrant, and to slide over it like a sleeve, as before stated. The reissued patent of 1872 substantially embraces both features of the improved case, namely, its disconnection with the hydrant both above and below, and places much stress on the dead-air chamber as a protection from frost, and on the protection of the hydrant below from the surrounding earth; although no claim is based on these last features.

The defendants contend that this reissued patent is not for the same invention as that which is described and patented in and by the original patent of 1858; that the latter made no mention of the dead-air chamber formed by the casing, as a protection of the hydrant from the frost; and that it contained no indication that the case should fit closely to the hydrant, so as to prevent the passage of cold air into the chamber from without. But to these objections it is answered, that the case invented by Race and Mathews in 1858 was a machine or apparatus having, or being susceptible of, various functions, some of which were well known and needed not to be mentioned or described. Amongst these known functions of the hydrant casing were, the formation of a dead-air chamber to prevent freezing, and the protection of the hydrant from contact with the surrounding earth. The patent of Coffin, on which the defendants rely, states that prior to the date of his invention *frost jackets*, or cases, on hydrants were well known; that they surround the hydrant proper, an air space existing between the two. It was not necessary for the patentees, Race and Mathews, to enumerate all the known functions of these frost jackets in their original patent; and, as no claim was based upon them, it could not be hurtful to enumerate them in the reissued patent.

But the complainants, in their reissued patent, have split up and divided the elements of their invention, and claimed them separately, and not as a combination. Of course, this enlarges the scope of their patent. The separate claims embrace fewer elements in combination than were embraced in the claim of the original patent. No one could infringe the original patent unless he used all the elements of the combination. Any one will infringe the reissue who uses any of those elements which are now separately claimed.

The original patent had but a single claim in reference to the case, being a claim for a combination between the hydrant, the induction pipe provided with a flange to sustain the jacket, and the jacket itself, when arranged as described in the specification to effect the desired end, to wit, the ready removal of the hydrant. This, in the reissued patent, is divided into two claims, namely, first, the jacket surrounding the hydrant and

forming a separate and removable part from the elbow, substantially as and for the purpose set forth; secondly, the independent jacket supported on the arm or elbow of the main at or near the junction of the hydrant, substantially as shown and described; that is to say, there is a claim of a jacket separate and removable from the elbow, and of a jacket resting on the elbow. It cannot be denied that each of these separate claims is much broader than the claim in the original patent; and they are put forth in the reissue fourteen years after the original was granted. The latter showed on its face that these broad claims were not made; and if the patentees were really the inventors of an independent jacket standing loosely on the elbow of the main, when apprised that it was not claimed in the patent they ought to have used due diligence in surrendering it and having the mistake corrected. The case clearly comes within the ruling in *Miller* v. *Brass Company*, 104 U. S. 350.

There is still another objection to the claims in question. There is a wide departure from the original invention in this, that the subject of the latter was a jacket, or casing, whose top was enclosed and covered by a flange projecting from the hydrant, which effectually prevented the removal of the jacket without removing the hydrant also; and which caused the hydrant to be raised when the jacket was lifted by the frost. In the reissued patent nothing is said of this arrangement of the top of the jacket, and the claims ignore it altogether; so that, as already intimated, the patent as it now stands would cover such a jacket as that described and claimed in the complainants' patent of 1869, which slides like a sleeve over the hydrant at top as well as bottom. The reissue is not only for a broader claim made many years after the original was granted, but is for a different invention. Therefore, so far as the jacket is concerned, we think it cannot be sustained.

But the patent of 1869 still remains. That was for an improvement by which it was proposed to liberate the top of the case from the flange which covered and enclosed it, and make it surround the hydrant and slip over it like a sleeve. The claim is for " the detached case B, so combined and arranged with the hydrant A, as to have an end play, or vertical motion

of several inches, to compensate for the heaving by frost, the upper part of same passing outside of main stock of hydrant." Had this patent been confined to a hydrant jacket closed at the bottom, and resting on a flange of the main elbow, perhaps it might have been sustainable.    But it is not so confined.    It is only said that the lower end *preferably* shuts into a flange of the elbow.   The specification, it is true, commences with a statement that the invention was a mere improvement upon that described by the patent of 1858, which was for a case closed at the bottom by standing on a flange; but before getting through, there is an evident departure from that, and an indication that the patentees had begun to entertain views of an expanded construction intended to be placed on the original patent, which afterwards found expression in the reissue of 1872.   The claim of the patent of 1869, as it stands, covers any and every loose jacket having an end play to compensate for the heaving of the frost, and having the upper end passing around the hydrant.   It covers the old New York wooden case, or housing, which was in public use for many years before Race and Mathews gave their attention to the subject.   We are of opinion, therefore, that this patent cannot be sustained.

As to the valve apparatus, the object of which is to let the water in the body of the hydrant escape when the main valve is closed, and to prevent any escape of water when the main valve is open, since Race and Mathews were not the original inventors of this process, but only of a particular arrangement of valves to effect it, they can only properly claim the specific arrangement which they invented.   And in view of the older valve in the St. Louis hydrants, which that of the defendants most nearly resembles, and of the fact that the valve used by the defendants is not in the specific form of that invented by Race and Mathews, we think that the defendants are correct in their position that they do not infringe the patent of Race and Mathews, as that patent must be construed in order to be sustained.

*Decree affirmed.*

MR. JUSTICE MATTHEWS and MR. JUSTICE GRAY did not sit in this case, nor take any part in deciding it.